UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEMETRIUS HAMILTON,

        Petitioner,

                                      CASE NO. 5:10-CV-14392

v.                             JUDGE JOHN CORBETT O'MEARA
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

KEN ROMANOWSKI,

        Respondent.[1]
_____/


## REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION (docket #1) and PETITIONER'S MOTION TO EXPAND THE RECORD (docket #10)

*Table of Contents*

I.      RECOMMENDATION ................................................................ 2
II.    REPORT ........................................................................ 2
     A.     *Procedural and Factual Background* ......................................... 2
     B.     *Standard of Review* ...................................................... 6
     C.     *Analysis* ............................................................... 8
           1.    *Clearly Established Law* ................................................ 10
           2.    *Withdrawal/Innocence* ................................................. 12
           3.    *Voluntariness* ......................................................... 14
           4.    *Ineffective Assistance of Counsel* ...................................... 16
                 a. Discovery Materials ............................................... 16
                 b. Motion to Quash Armed Robbery Count ............................. 17
                 c. Double Jeopardy Challenge ........................................ 18
                 d. Advise Regarding Intent to Kill Element ............................. 19
                 e. Advice Regarding Sentencing Exposure ............................. 20
           5.    *Brady Claim* ......................................................... 21
           6.    *Conclusion* .......................................................... 24
     D.     *Motion to Expand the Record* ............................................. 24
     E.     *Recommendation Regarding Certificate of Appealability* ........................ 26
           1.    *Legal Standard* ...................................................... 26
           2.    *Analysis* ............................................................. 27
     F.     *Conclusion* .............................................................. 27
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ..................................... 28

---

[1]By Order entered this date, Ken Romanowski has been substituted in place of Cindi Curtin as the proper respondent in this action.

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.   <u>REPORT</u>:

A.    *Procedural and Factual Background*

Petitioner Demetrius Hamilton is a state prisoner, currently confined at the Macomb Correctional Facility.  Petitioner was initially charged in two separate cases filed in the Wayne County Circuit Court.  In the first, he was charged with third degree criminal sexual conduct (CSC-III), MICH. COMP. LAWS § 750.520d, based on his having sexual intercourse with a 14-year-old girl in his apartment on October 29, 2005.  In the second case, he was charged with assault with intent to commit murder (AWIM), MICH. COMP. LAWS § 750.83; armed robbery, MICH. COMP. LAWS § 750.529; felonious assault, MICH. COMP. LAWS § 750.82; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, arising from the assault and robbery of Jamane Dinkins on January 18, 2006.  In the AWIM case, the victim testified at the preliminary examination that petitioner approached him with a gun and told him to "run your shit," meaning give petitioner his possessions and money.  The victim gave petitioner his cell phones, and then ran. Petitioner shot him in his leg, abdomen, buttocks, and back.  *See* Prelim. Exam. Tr., dated 11/21/06, at 10-13.  The victim knew petitioner from a previous encounter, identified petitioner to the police by his nickname, and was positive that petitioner was the one who had shot him.  *See id.* at 31-32. The CSC-III case was apparently based on the complaint of the victim, who reported that petitioner, an acquaintance of hers, pulled her inside his apartment and forced her to have sexual intercourse. *See* Plea Tr., dated 3/19/07, at 8.

On March 19, 2007, the date set for trial, the parties reached a plea agreement.  Under the terms of the agreement, petitioner would plead no contest in the AWIM case to the AWIM and felony-firearm charges, in exchange for dismissal of armed robbery and felonious assault charges and a sentence of 10-20 years' imprisonment.  In the CSC-III case, petitioner would plead no contest to a charge of attempted CSC-III, with credit for time served and a sentence to run concurrent with the sentence in the AWIM case.  *See* Plea Tr., dated 3/19/07, at 3-5.  At the plea hearing, the trial court explained the terms of the agreement and the maximum term of imprisonment petitioner could face on each charge to which he was pleading guilty.  *See id*. at 4-5.  The court then engaged in the following colloquy with petitioner:

> THE COURT:       Has anything other than what's been placed on the record been promised to you in order to get you to tender a plea of no contest to these charges?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT:       You are pleading freely and voluntarily, correct?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:       You understand that by pleading no contest you are giving up certain rights?  Included in those rights are the rights that are listed at the bottom of the settlement offer and notice of acceptance.
>                           Have you had a chance to review those rights that are on the bottom of the sheet that you signed?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:       You understand them?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:       And you wish to waive them, correct?
>
> THE DEFENDANT: Yes, ma'am.

3

*Id*. at 5-6.  After establishing a factual basis for petitioner's plea through the investigator's reports, *see id*. at 6-8, the court accepted petitioner's pleas.  *See id*. at 8.

On April 19, 2007, the date set for sentencing, defense counsel Robert Slameka informed the court that petitioner wished to withdraw his pleas.  Petitioner clarified that he did not wish to withdraw his plea on the attempted CSC-III charge, but only on the AWIM charge.  *See* Sentence Tr., dated 4/19/07, at 5.  Defense counsel explained that the problem with petitioner's position was that the plea on the reduced attempted CSC-III charge was premised on petitioner's plea to AWIM, and the prosecutor confirmed that this was the case.  *See id*. at 5-6.  Petitioner indicated his desire to speak, and the following exchange occurred:

> THE DEFENDANT:   I've been asking for my discovery package for quite sometime now, and I haven't gotten it yet.
> On the CSC charge, I mean, I was wrong on that charge.  But on the other case I would like to fight because I don't feel like, I did not do this.  I didn't commit that crime.
>
> MR. SLAMEKA:   Let's stop right there.  See when you engage in this kind of conversation the attorney client privilege is waived.
> Mr. Hamilton, do you want me to tell the Court what you told me when I interviewed [you] at the jail in terms of the shooting?  Or do you want me to remain silent on that?  Come on, tell me what you want me to do?
>
> THE DEFENDANT:   I mean, whatever you want to do.
>
> MR. SLAMEKA:   Fine.  When I interviewed him at the County Jail–and I'm telling you this only because he raises this–I indicated so and so claims to have shot you and the two people who did it.  He says, "yeah, I did it.  I shot the guy because years before he beat me up and I waited to get back to him."
>
> THE DEFENDANT:   No, Your Honor –
>
> THE COURT:   You know what, the bottom line is regardless of all that –
>
> THE DEFENDANT:   Your Honor, I did not say that.

4

THE COURT:        –and I'm not using that to base my decision here.  But at the
                  time you entered into this plea, which was March 19th–

                              . . . .

                  On March 19, 2007, you entered into a plea.  I asked
                  you if your plea was given freely and voluntarily?  We went
                  through and I gave you all of your rights.  You said it was
                  freely and voluntarily given.

                  I told you, you had a right to be tried by a jury and all
                  the rights that are listed at the bottom of the settlement offer
                  and notice and acceptance.  You said, you understood it.

THE DEFENDANT:    Yes, ma'am.  And also, he told me, he told me that you was
                  a judge that didn't like to go to trial.  If I got found guilty in
                  front of you for my attempt murder case, I would get forty
                  years.  He also told me that.  He also told me that if I did get
                  found guilty on [the] CSC case I can get twenty years for that.
                  And that's–

                              . . . .

                  –that's what scared me.  When he came with the ten
                  year c[a]p, that's when I jumped on it.

MR. SLAMEKA:      He forgot to tell you that I took the mother back three times
                  and she talked to him, not me.  The deputy who, if you
                  remember– I took her back there so she could talk to him by
                  herself.  I had no influence on him.

THE COURT:        Sir, you've gotten more leeway than most defendants in this
                  courtroom.  I did give you extra time.  I did allow your
                  mother to speak with you.  And in no way were you forced
                  into entering this plea. . . .  So I am not allowing you to
                  withdraw your plea today.

*Id*. at 7-9.  The Court then sentenced petitioner, in accordance with the plea agreement, to a term of

10-20 years' imprisonment on the AWIM conviction, a two year term of imprisonment on the

felony-firearm conviction, and to time served on the attempted CSC-III conviction.

Petitioner thereafter was appointed appellate counsel on several occasions, each of whom

withdrew.  Eventually, a substitute counsel was appointed, but by this time petitioner's time for

filing an application for leave to appeal had lapsed.  Petitioner therefore filed in the trial court a

5

motion for relief from judgment pursuant to MICH. CT. R. 6.500-.509, arguing that he was innocent, that his plea was involuntary, and that counsel was ineffective. The trial court denied the motion on July 16, 2009. *See People v. Hamilton*, No. 06-013506-01 (Wayne County, Mich., Cir. Ct. July 16, 2009) [hereinafter "Trial Ct. op."]. The Michigan Court of Appeal and Michigan Supreme Court subsequently denied petitioner's applications for leave to appeal in standard orders. *See People v. Hamilton*, 486 Mich. 1045, 783 N.W.2d 346 (2010); *People v. Hamilton*, No. 295024 (Mich. Ct. App. Dec. 29, 2009).

On November 2, 2010, petitioner filed this application for the writ of habeas corpus, raising the following claim for relief:

> PETITIONER DEMETRIUS HAMILTON'S GUILTY PLEA WAS INDUCED BY THE ERRONEOUS AND COERCIVE ADVISE OF COUNSEL DEPRIVING HIM OF THE EFFECTIVE ASSISTANCE OF COUNSEL, IN CONJUNCTION WITH THE FACT THAT DEFENDANT IS ACTUALLY INNOCENT OF [THE] CHARGES FOR WHICH HE STANDS CONVICTED MAKING THE PLEA UNKNOWING, UNINTELLIGENT, AND INVOLUNTARY IN VIOLATION OF DEFENDANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION.

Respondent filed an answer on May 18, 2011, arguing that petitioner's claims are without merit, and petitioner filed a reply on June 30, 2011. Petitioner has also filed a motion to expand the record.

B.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in

6

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

7

the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

C.      *Analysis*

Petitioner contends that his guilty plea was unknowing and involuntary, and that the trial court erred in refusing to allow him to withdraw his plea prior to sentencing, and that counsel rendered constitutionally ineffective assistance in connection with the plea. The trial court rejected petitioner's claims, reasoning:

8

In the present case, the record indicates that the court painstakingly ensured that defendant was apprised of his rights in regards to his plea, including, inter alia, his right to a trial.  There is nothing in the record to indicate that defendant's plea was anything but understanding, voluntary, and accurate per MCR 6.302.  Further, even though defendant pled nolo contendre [sic], the record indicates that the court complied with the rules and established an adequate factual basis of the acceptance of the plea despite defendant's contention that he was not personally provided copies of discovery materials.

Second, although the record of the sentencing hearing clearly reflected tension between defendant and defense counsel, the court finds that any break down in the attorney client relationship did not amount to ineffective assistance of counsel as envisioned in *Strickland*, nor did it lead to a plea that was induced by "erroneous and coercive advice of counsel".

Trial counsel appears to have advised defendant about the possible consequences of a conviction on all of the counts if he lost at trial. The record also reflects that defendant made the strategic decision to mitigate the possible prison term he faced if convicted at trial.  Defendant said that he was scared of the consequences if he lost at trial and, "[W]hen he [defense counsel] came with the ten year cop [sic], that's when I jumped on it."  Further, on the day of sentence, defendant admitted that as to the CSC 3rd case, "I was wrong on that charge".

The record is also clear that the plea agreement was a package deal that included both cases.  Defendant apparently failed to understand that if he withdrew his plea on the Assault with intent to Murder, Armed Robbery, Felonious Assault, and Felony Firearm case, then the prosecutor would have withdrawn the offer as to the Criminal Sexual Conduct Third Degree case (a charge for which defendant on the record admitted he was guilty of).

Besides being advised by counsel, the record also indicates that defendant had ample time to make a decision prior to entering the plea agreement and that he was afforded the opportunity to consult with family members regarding the plea agreement.  Defense counsel indicated that defendant's grandmother contacted him and had expressed reservations about the length of the sentence.  Although not conclusive, the court speculates this factor may have led defendant to have a change of heart regarding the plea agreement.  Consequently, the court is not persuaded by defendant's ineffective assistance of counsel claim.

Third, although defendant asserts his innocence, . . . an examination of the preliminary examination transcript reveals that the victim unequivocally identified defendant as the man who shot and robbed him. . . . [T]he advice provided by trial counsel here appears to be soundly based considering the testimony of the victim at the preliminary exam.

Trial Ct. op., at 4-6.  Because this decision was neither contrary to, nor an unreasonable application

of, clearly established federal law, the Court should conclude that petitioner is not entitled to habeas

9

relief.

    1.    *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id.* at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These

two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id*.

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

11

> have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

   2.   *Withdrawal/Innocence*

   To the extent petitioner contends that the trial court erred in failing to allow him to withdraw his plea, his claim is not cognizable on habeas review. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169

(2d Cir. 1979).  Thus, the trial court's failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

This is so notwithstanding petitioner's claim that he is innocent of the charges for which he was convicted.  As another court observed long ago, there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea involuntary as a matter of constitutional law." *Hansen v. Mathews*, 296 F. Supp. 1398, 1331 (E.D. Wis. 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970).  Although *Hansen* was decided nearly forty years ago, this observation holds true today.  It is well established that "factual guilt or innocence . . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 n.28 (E.D. Pa. 1975), *aff'd*, 538 F.2d 322 (3d Cir. 1976); *see also*, *Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least.").  Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime.  *See  North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).  "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, a fortiori a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

Further, even under the standard applicable to pleas in federal court under FED. R. CRIM. P. 11, petitioner cannot show that he would be entitled to withdrawal of his plea.  Under this standard, a claim of innocence alone does not entitle a defendant to withdraw his plea; rather, withdrawal is

permitted only in the "most compelling of circumstances indicating the innocence of the defendant." *United States v. Tolson*, 372 F. Supp. 2d 1, 24 (D.D.C. 2005), *aff'd*, 264 Fed. Appx. 2 (D.C. Cir. Jan. 25, 2008); *see also*, *United States v. Robinson*, 498 F. Supp. 2d 328, 331-32 (D.D.C. 2007).  To be entitled to withdrawal, a "defendant must come forward with some evidentiary support for his innocence."  *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 595 (E.D. Va. 2004); *see also*, *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001).  Here, petitioner does not have any evidentiary support for his claim of innocence other than his own denial of guilt, a denial which conflicts with the direct, unequivocal testimony of the victim at the preliminary examination.  Thus, petitioner is not entitled to habeas relief based on his assertion of innocence or his claim that the trial court erred in failing to allow him to withdraw his plea.

     3.     *Voluntariness*

     Nor can petitioner show that his plea was involuntary or unintelligent.  At the plea hearing, petitioner indicated that he understood the agreement, the proceedings taking place in the courtroom, and the rights he was waiving those rights by pleading guilty.  Petitioner also denied that any promises or threats had been made to induce his plea, and that he was pleading of his own free will.  *See id*. at 6.  These statements "carry a strong presumption of verity."  *Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  As a number of Judges of this Court have observed:

> When a petitioner brings a federal habeas petition challenging his plea of guilty (or no contest), the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. The factual findings of a state court that the guilty plea was properly made are generally

14

> accorded a presumption of correctness. Petitioner must overcome a heavy burden if
> the federal court is to overturn these findings by the state court. . . . Additionally, a
> habeas petitioner bears a heavy burden of rebutting the presumption that his or her
> guilty plea, as evidenced by the plea colloquy, is valid.

*Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005) (Gadola, J.) (citations

omitted); *accord Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002) (Friedman,

J.); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002) (Cleland, J.); *Holtgreive v.

Curtis*, 174 F. Supp. 2d 572, 586 (E.D. Mich. 2001) (Hood, J.); *Myers v. Straub*, 159 F. Supp. 2d

621, 626 (E.D. Mich.2001) (Steeh, J.). In short where, as here, "the court has scrupulously followed

the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted).

Nor can petitioner show that his plea was invalid because it was motivated by the fear of a

significantly greater sentence. As the Supreme Court has explained, a guilty plea is not "compelled

and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the

certainty or probability of a lesser penalty rather than face a wider range of possibilities extending

from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*,

397 U.S. at 751. The Court in *Brady* did explicitly "make no reference to the situation where the

prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce

a particular defendant to tender a plea of guilty." *Id*. at 751 n.8. However, there is no evidence that

the prosecutor vindictively employed his charging powers by charging crimes not supported by the

evidence. As explained below, there was evidence to support the charges against petitioner.

Whether this evidence would have sufficed to prove the elements of the charged crimes beyond a

reasonable doubt is irrelevant. "[S]o long as the prosecutor has probable cause to believe that the

accused committed an offense defined by statute, the decision whether or not to prosecute, and what

15

charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  And because the prosecutor did not vindictively or inappropriately exercise that discretion, petitioner's desire to avoid a potentially severe sentence does not render his plea involuntary.  In short, petitioner has not shown that his plea was involuntary or unintelligent, and petitioner is not entitled to habeas relief on this claim.

       4.     *Ineffective Assistance of Counsel*

      Petitioner also contends that his plea was involuntary because counsel rendered constitutionally ineffective assistance in connection with the plea.  Specifically, petitioner contends that counsel was ineffective for failing to: (1) provide him with discovery materials; (2) file a motion to quash the armed robbery count; (3) challenge the felonious assault count on double jeopardy grounds; (4) advise him that the state was required to prove that he intended to kill the victim if he went to trial; and (5) provide him accurate advice regarding his sentence exposure if he went to trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

                      *a.  Discovery Materials*

      Petitioner first contends that counsel was ineffective for failing to provide him with copies of the discovery materials provided to counsel by the prosecution.  However, petitioner fails to explain what exculpatory material the discovery materials may have included, or how the absence of the discovery materials affected his decision to plead guilty.  The cases against petitioner were straightforward, based on the testimony of the victims.  Indeed, petitioner admitted his guilt with respect to the CSC-III case.  Further, the record makes clear that petitioner entered his pleas in fear of a potentially long prison term if convicted after a trial.  It is petitioner's burden to show that counsel's actions satisfy the two prongs of the *Strickland* test.  *See United States v. Pierce*, 63 F.3d

16

818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Without explaining how this discovery material would have affected his decision to plead no contest, petitioner has failed to satisfy the prejudice prong of the *Strickland* test.

### b. Motion to Quash Armed Robbery Count

Petitioner next contends that counsel was ineffective for failing to move to quash the armed robbery count. Petitioner argues that this charge was not supported by evidence because the victim testified that petitioner did not take any property from him, but that the victim threw the property to the ground. Petitioner cannot show that counsel was ineffective in failing to move to quash these counts because he cannot show a reasonable probability that these counts would have been quashed had such a motion be made. Under Michigan law, a charge will be bound over for trial to the circuit court if there is probable cause to believe a crime has been committed and the defendant committed the crime. *See* MICH. COMP. LAWS § 766.5. In making the probable cause determination, the district judge does not weigh the credibility of the witnesses. The judge may rely on circumstantial evidence and draw reasonable inferences from the evidence, and the probable cause determination is entitled to great deference. *See People v. Crippen*, 242 Mich. App. 278, 281-82, 617 N.W.2d 760, 763 (2000); *People v. Woods*, 200 Mich. App. 283, 287-88, 504 N.W.2d 24, 27 (1993). Here, the victim testified at the preliminary examination that petitioner told him to "run your shit," which the victim testified was slang for the victim to give petitioner his possessions, and that petitioner did this while pointing a gun at him. Regardless of whether this testimony would have been sufficient to prove petitioner's guilt beyond a reasonable doubt at trial, it was sufficient to provide probable cause that  petitioner took property from the victim while armed, the elements of the armed robbery

17

statute. *See Banks v. Rivard*, 760 F. Supp. 2d 724, 729 (E.D. Mich. 2010) (Lawson, J.) (citing *People v. Johnson*, 206 Mich. App. 122, 123, 520 N.W.2d 672, 673 (1994)).

Further, petitioner's assertion that he would have insisted on going to trial had the armed robbery charge been quashed is simply not credible. The armed robbery charge carried a potential maximum sentence of life imprisonment. *See* MICH. COMP. LAWS § 750.529. So too, however, did the AWIM charge. *See* MICH. COMP. LAWS § 750.83. And the CSC-III charge carried a potential maximum sentence of 15 years' imprisonment. *See* MICH. COMP. LAWS § 750.520d(2). In exchange for his plea, petitioner was guaranteed a term of 10-20 years' imprisonment, with no additional prison time on the CSC-III charge. Petitioner would still have been accepting a significant reduction in his sentencing exposure–trading a potential life sentence for a term with a maximum of 20 years' imprisonment and the potential of serving only 10 years' imprisonment. It is difficult to believe that petitioner would have weighed the risks and benefits of trial versus accepting the prosecutor's plea deal any differently had he faced only one, instead of two, charges carrying a potential life sentence. *Cf. United States v. Baramdyka*, 95 F.3d 840, 846-47 (9th Cir. 1996). Certainly, the trial court could reasonably reach this conclusion, and the Court should therefore conclude that petitioner is not entitled to habeas relief on this claim.

### c. Double Jeopardy Challenge

Petitioner also contends that counsel was ineffective for failing to raise a double jeopardy challenge to the felonious assault charge, because that charge was subsumed by the armed robbery charge. As with his prior claim, petitioner cannot show that he would have differently weighed the risks and benefits of trial versus accepting the plea offer had the trial court dismissed the felonious assault charge, which carried a potential term of imprisonment of only 4 years. *See* MICH. COMP.

LAWS § 750.82(1).  In any event, any pretrial challenge to the felonious assault charge on double jeopardy grounds would have been meritless.  While the Double Jeopardy Clause prohibits conviction and sentence on both a greater and lesser included offense, "[t]o the extent that a defendant is charged with greater and lesser included offense, the Double Jeopardy Clause does not prohibit simultaneous prosecution."  *United States v. Hasan*, 747 F. Supp. 2d 642, 701 (E.D. Va. 2010); *Moore v. Chrones*, 687 F. Supp. 2d 1005, 1073 n.56 (C.D. Cal. 2010).  Thus, any challenge to the felonious assault charge would have been meritless, and counsel's failure to raise such a challenge could not have affected his decision to plead no contest.

### d.  Advice Regarding Intent to Kill Element

Petitioner also contends that counsel was ineffective for failing to advise him regarding the elements of the AWIM charge, specifically that the prosecution would have had to show that he intended to kill the victim.  Petitioner contends that, based on the location of the gunshot wounds, the prosecution could not establish an intent to kill and, had he known of this element, he therefore would not have pleaded no contest.  Even assuming that counsel did not properly advise petitioner of the elements of AWIM, petitioner cannot show how this affected his plea.  Petitioner's argument that, based on the location of the gunshot wounds, the prosecution would not have been able to establish that he had the intent to kill is without merit.  The victim testified that petitioner shot at him as he attempted to flee, approached him, and fired several more times, striking him four times.  This evidence would have been sufficient at trial for a jury to conclude beyond a reasonable doubt that petitioner intended to kill the victim.  *See People v. Degraffenreid*, No. 258577, 2006 WL 932386, at *1 (Mich. Ct. App. Apr. 11, 2006); *People v. Davis*, No. 216361, 2000 WL 33403439, at *1 (Mich. Ct. App. Oct. 21, 2000).  And as explained above it was the possibility of a significant

sentence, one which existed notwithstanding petitioner's argument about the location of the gunshot wounds, that induced petitioner's plea. Thus, even if counsel failed to adequately explain the elements of the AWIM charge, petitioner cannot show that he would have insisted on going to trial had counsel done so. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Advice Regarding Sentencing Exposure

Finally, petitioner contends that counsel provided improper advice regarding the possible sentences he faced if convicted after trial. Petitioner contends that counsel misinformed him that he could receive a 20 year term of imprisonment on the CSC-III charge, while the maximum for that charge was 15 years, and that counsel advised him that the 10 year sentence agreed to by the parties was below the guidelines, when in fact the guideline sentence range for the AWIM conviction was 9-15 years' imprisonment for the minimum term. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As the Supreme Court has explained:

> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970). Thus, counsel's allegedly erroneous advice regarding petitioner's likely sentence does not provide a basis for habeas relief. *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993). Moreover, it is far from clear that counsel's advice was erroneous. While it is true that the maximum term of imprisonment for CSC-III is generally 15

20

years' imprisonment, as respondent notes petitioner had a prior criminal record, potentially subjecting him to an enhanced penalty beyond this range as an habitual offender. *See* MICH. COMP. LAWS § 769.10-.11. With respect to the guidelines issue, the record reflects that counsel thanked the prosecutor for the agreement "because this is well below the guidelines." Plea Tr., at 4. It is not clear from the context, however, whether counsel was referring to the AWIM charge specifically, or what the guidelines would have been on all the charges if petitioner had been convicted after trial. In any event, even assuming that counsel was referring specifically to the AWIM guidelines, and that petitioner's calculation of those guidelines was correct, the 10 year minimum was at the low end of the range from which the trial court could have chosen the minimum sentence. More importantly, where the minimum sentence was imposed in relation to the guideline range was not a factor in the plea. Rather, the most significant factor in inducing the plea was capping the maximum term of imprisonment at 20 years, thus avoiding the possibility of a maximum sentence for a greater term of years or for life. Thus, petitioner cannot show that but for counsel's minor errors regarding the sentence, if they were errors, he would have insisted on going to trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

     5.   *Brady* Claim

In his reply brief, petitioner raises for the first time a claim that the state suppressed exculpatory evidence. This claim is not properly before the Court, as it has not been exhausted in the state courts nor was it raised in petitioner's habeas application. In any event, the claim is without merit.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). However, petitioner's claim does not meet the

requirements of a true *Brady* violation. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

Notwithstanding this law, petitioner's claim does not state a violation of clearly established federal law under § 2254(d)(1). The Supreme Court has never held that the *Brady* rule requires disclosure of exculpatory evidence prior to the entry of a plea, rather than for use at trial. On the contrary, the Supreme Court has repeatedly referenced the *Brady* rule as necessary to secure a fair trial before the fact finder. In *Brady,* the Court explained that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him . . . helps *shape a trial* that bears heavily on the accused." *Brady*, 373 U.S. at 87-88 (emphasis added). In *United States v. Agurs*, 427 U.S. 97 (1976), the court explained that the rule prohibiting the use of perjured testimony, upon which the *Brady* rule is founded, is based on the notion that the use of perjured testimony represents "a corruption of the truth-seeking function of the *trial process*." *Id.* at 104 (emphasis added). Similarly, in *United States v. Bagley*, 473 U.S. 667 (1985), the Court stated

that "suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a *fair trial*." *Id.* at 678 (emphasis added).

In light of this focus on the effects of suppressing evidence on the truth-finding function of the jury at trial, several courts have held that the failure to disclose exculpatory information prior to the taking of a plea does not render the plea involuntary or constitute a *Brady* violation. The reasoning of this rule was aptly explained by the Fifth Circuit: "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to a trial is not a constitutional violation." *Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir. 2000). To be sure, other courts have reached a contrary conclusion, including the Sixth Circuit. *See, e.g., Sanchez v. United States*, 50 F.3d 1448, 1453-54 (9th Cir. 1995); *United States v. Avellino*, 136 F.3d 249, 255 (2nd Cir. 1998); *Campbell v. Marshall*, 769 F.2d 314,324 (6th Cir. 1985). The continued validity of these cases, however, is called into question by the Supreme Court's more recent decision in *United States v. Ruiz*, 536 U.S. 622 (2002). In that case, the Court held that a plea is not rendered invalid by the prosecutor's failure to disclose exculpatory impeachment information prior to the entry of the plea. *See id.* at 628-33. While the Court expressly declined to consider whether this rule also applied to exculpatory substantive evidence, the Court's reasoning focused on the *Brady* rule's connection to the truth-finding function at trial, suggesting that the holding in *Ruiz* extends to exculpatory substantive evidence as well. Indeed, at some points the Court did not distinguish between the two types of exculpatory evidence, going so far as to note that "due process considerations, the very same considerations that led this Court to find trial related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence

23

of the 'right'" to pre-plea disclosure. *Ruiz*, 536 U.S. at 631.

More importantly, even if the court of appeals cases recognizing such a right survive *Ruiz*, those cases alone cannot provide a right to habeas relief. Under § 2254, habeas relief is available only if the state court violated clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). In light of the reasoning of *Ruiz*, the Court's repeated description of *Brady* as grounded in the right to a fair trial, the lack of any Supreme Court precedent requiring *Brady* material to be disclosed prior to the entry of a guilty plea, and the split among the courts of appeals on this issue, it cannot be said that the right petitioner seeks to invoke here constitutes clearly established law under § 2254(d)(1). *See Jones v. Bryant*, 27 Fed. Appx. 699, 701 (7th Cir. 2001). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

6.      *Conclusion*

The record indicates that petitioner voluntarily and knowingly entered his plea of guilty. Counsel negotiated for petitioner a significant reduction in the punishment he faced, securing dismissal of two charges, a reduced charge without only time served on another charge which may also have been subject to enhanced habitual offender sentencing, and a maximum term of imprisonment of 20 years on a charge carrying a potential life sentence. Petitioner's subsequent "[b]uyer's remorse is not grounds for" invalidating the plea. *United States v. Cruz-Banegas*, 430 Fed. Appx. 742, 747 (10th Cir. 2011). Accordingly, for the reasons explained above, the Court should conclude that petitioner is not entitled to habeas relief.

D.      *Motion to Expand the Record*

On September 19, 2011, petitioner filed a motion to expand the record. Petitioner seeks to

24

included a Report prepared by a hearing panel to the Michigan Attorney Discipline Board recommending that Board impose discipline of petitioner's counsel for revealing privileged communications. Specifically, the hearing panel found that counsel improperly divulged privileged communications without a valid waiver at the sentencing hearing, when he revealed petitioner's alleged admission to having committed the assault. The Court should conclude that expansion of the record is not necessary, and should therefore deny the motion.

Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts provides that a habeas court "may direct the parties to expand the record by submitting additional materials relating to the petition." Rule 7(a), 28 U.S.C. foll. § 2254. Under Rule 7, "[w]hen expansion of the record is sought, the court must assess whether the materials submitted are relevant to resolution of the petition." *Murdaugh v. Ryan*, No. CV 09-831, 2010 WL 3523070, at *68 (D.Ariz. Sept. 3, 2010); *see also*, *Levine v. Torvik*, 986 F.2d 1506, 1517-18 (6th Cir. 1993) (suggesting that under Rule 7 it is not appropriate to include evidence in the record which has no relevance to the issues before the court). Here, the finding that counsel revealed privileged communications at the sentencing hearing is irrelevant to the issues before the Court. Petitioner's habeas application attacks the validity of his guilty plea. Counsel's conduct at sentencing could not have impacted whether petitioner's plea was voluntary and intelligent at the time it was made, nor does it suggest that counsel's advice regarding the plea was in any way deficient or prejudicial. Further, petitioner cannot show any prejudice from counsel's disclosure, because the trial court explicitly stated that its decision on petitioner's motion to withdraw was being made without consideration of counsel's comments. *See* Sentence Tr., at 7-8. Thus, the report petitioner seeks to expand the record to include has no relevance to the resolution of petitioner's claims, and

expansion of the record is therefore not necessary.  Accordingly, the Court should deny petitioner's motion to expand the record.

E.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of

26

probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, it is clear that petitioner cannot obtain habeas relief based on the trial court's failure to allow him to withdraw his plea or his assertions of innocence. Further, the record establishes that petitioner's plea was knowingly and voluntarily entered, and that counsel's allegedly ineffective assistance either was not deficient performance or had no bearing on petitioner's decision to plead guilty. Thus, the resolution of petitioner's claims is not reasonably debatable, and the Court should therefore deny petitioner a certificate of appealability.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 7, 2012                         s/Paul J. Komives_____
                                           PAUL J. KOMIVES
                                           UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on May 7, 2012
electronically and/or by U.S. mail.

                                           s/Michael Williams_____
                                           Relief Case Manager for the Honorable
                                           Paul J. Komives